Filed 9/10/20  P. v. Burleson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F079169 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SUF7138B) |
| GAYLIN LYNN BURLESON, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Franson, J. and Meehan, J.

Defendant Gaylin Lynn Burleson pled guilty to robbery, kidnapping for robbery, and murder. On appeal, he contends the trial court erred in failing to follow the procedure created by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). The People concede the trial court did not follow the appropriate procedure. We accept the People's concession, reverse, and remand. We affirm in all other respects.

## PROCEDURAL AND FACTUAL SUMMARY

On September 14, 1971,[1] a San Joaquin County grand jury indicted defendant and his two codefendants, Lonnie Chatman and Robert Hardcastle, for robbery (Penal Code, § 211;[2] count 1), kidnapping for the purpose of robbery (§ 209; count 2), and murder (§ 187; count 3).

On November 23, the indictment was amended to also allege that defendant had suffered two prior convictions. On the same date, defendant pled guilty to first degree robbery, kidnapping for the purpose of robbery, and first degree murder, and admitted both prior conviction allegations.

On December 21, the trial court sentenced defendant to a term of life in prison on count 3. The court imposed terms on counts 1 and 2 to run concurrently to the term on count 3.

About 48 years later, on February 11, 2019, defendant filed a petition in Merced County Superior Court to vacate his murder conviction and to be resentenced under section 1170.95.

On April 8, 2019, the Merced County Superior Court denied defendant's petition. In reaching its decision, the court relied upon a factual summary from the appellate opinion issued in Chatman's appeal. The trial court summarized the facts as follows:

---

[1]     All further dates refer to the year 1971 unless otherwise stated.

[2]     All further statutory references are to the Penal Code unless otherwise stated.

"[Defendant], Lonnie Gene Chatman, and Robert Hardcastle discussed the idea of robbing a gas station where [defendant] had previously worked.  The three men went to Hardcastle's home and obtained a .303 rifle and a .20 gauge shotgun. They drove to the gas station where the victim, Michael Shockley, was working.

"Hardcastle went to the restroom with the shotgun, and [defendant] drove to the front of the station, stopped the car, and leaned over to the passenger side of the car with a map to ask the victim for directions.  When the victim took the map, [defendant] told him to put his hands up higher because Chatman, who was in the back seat, had a gun.  [Defendant] then ordered the victim into the front passenger seat and the victim complied.

"[Defendant] took the victim's keys to the gas station and went in. [Defendant] waited on a few customers who happened to enter the s[t]ation. After they left, [defendant] took about $107 and drove off with victim and his co-defendants.  They drove to a secluded barley field about five miles from the station.

"Once at the barley field, [defendant] and Chatman took the victim into the field.  Chatman tied him up, face-down on the ground.  [Defendant] went through his pockets, taking a set of car keys, a comb, some change, and a wallet with $8 in it.  [Defendant] then directed Chatman to shoot the victim with the shotgun and then walked off.  However, Chatman had previously fixed the shell in the shotgun so that it would not discharge. Chatman went to the car, took the rifle, and returned to the victim.  He told the victim he did not want to kill him and fired into the ground on the left-hand side of his head.

"When Chatman returned to the car, [defendant] asked if the victim was dead.  Chatman said he was.  [Defendant] did not believe Chatman and walked back to the victim with Chatman.  Victim was not dead and [defendant] told Chatman to shoot him again.  Chatman then fired one shot into victim's back and one into his head."

On April 18, 2019, defendant filed a notice of appeal.

# DISCUSSION

Effective January 1, 2019, Senate Bill 1437 limited accomplice liability under the felony murder rule[3] and the natural and probable consequences doctrine.[4] (§§ 188, 189, as amended by Stats. 2018, ch. 1015, §§ 2–3; *People v. Cruz* (2020) 46 Cal.App.5th 740, 755; *Lamoureux*, *supra*, 42 Cal.App.5th at p. 246.) The Legislature's purpose was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underl[y]ing felony and acted with reckless indifference to human life.' " (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410.)

---

**3** Prior to Senate Bill 1437's enactment, " '[t]he felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.' " (*People v. Friend* (2009) 47 Cal.4th 1, 76.) Prior to Senate Bill 1437's enactment, specifically with respect to felony murder with robbery as the underlying felony, section 189, subdivision (a) stated "All murder … that is committed in the perpetration of, or attempt to perpetrate, … robbery … is murder of the first degree."

**4** Prior to Senate Bill 1437's enactment, " ' "[a] person who knowingly aid[ed] and abet[ed] criminal conduct [was] guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commit[ted] [nontarget offense] that [was] a natural and probable consequence of the intended crime." ' " (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) " ' "[B]ecause the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime." ' " (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248 (*Lamoureux*).)

"Senate Bill 1437 also [added section 1170.95, which] established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts." (*Lamoureux*, 42 Cal.App.5th at p. 246; § 1170.95, added by Stats. 2018, ch. 1015, § 4.) Under that procedure, a convicted person is eligible for relief if the following conditions are met: "(1) A complaint, information, or indictment was filed against the [defendant] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The [defendant] was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the [defendant] could be convicted for first degree or second degree murder. [¶] (3) The [defendant] could not be convicted of first or second degree murder because of [the] changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

When a facially sufficient petition alleging entitlement to relief pursuant to section 1170.95 is filed,[5] the trial court must conduct an " ' "initial screening" ' " (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137 (*Lewis*)), "review[ing] the petition [to] determine if the [defendant] has made a prima facie showing that [he or she] falls within the provisions of [the statute]." (§ 1170.95, subd. (c).) The trial court's role at this stage of the proceeding is "to decide whether the [defendant] is ineligible for relief as a matter of law, making all factual inferences in favor of the [defendant]." (*People v. Verdugo*

---

**5** Such a petition must be filed in the court that sentenced defendant, give notice to the district attorney and defense counsel or the public defender, and include (1) a declaration by the defendant that he or she meets the eligibility requirements, (2) the superior court case number and year of conviction, and (3) whether the defendant requests appointment of counsel. (§ 1170.95, subd. (b)(1).) If any of the required content "is missing from the petition and cannot be readily ascertained," the court may dismiss the petition without prejudice. (*Id*., subd. (b)(2).)

(2020) 44 Cal.App.5th 320, 329 (*Verdugo*); accord *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) However, the trial court is not required to accept facts alleged in the petition as true if those allegations are clearly refuted by "readily ascertainable facts from the record (such as the crime of conviction)." (*Drayton*, at p. 980; see *Lewis*, at pp. 1137–1138 [in making the initial screening determination, the trial court may consider the defendant's record of conviction]; *Verdugo*, at p. 329 [same].)

If the defendant's petition survives the initial screening and if the defendant has requested counsel, the trial court must appoint counsel to represent the defendant. (§ 1170.95, subd. (c).) The parties then file briefing and the court determines whether the defendant made "a prima facie showing that he or she is entitled to relief." (*Ibid.*) When the court conducts this second prima facie review, "the court [again] takes [defendant]'s factual allegations as true and makes a preliminary assessment regarding whether the [defendant] would be entitled to relief if his or her factual allegations were proved." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) If the defendant has made "a prima facie showing that he or she is entitled to relief, the court [must] issue an order to show cause." (§ 1170.95, subd. (c).)

Within 60 days of issuance of an order to show cause, the trial court must "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the [defendant] on any remaining counts" (§ 1170.95, subd. (d)(1)) "unless the parties waive the hearing or the [defendant's] entitlement to relief is established as a matter of law by the record. (§ 1170.95, subd. (d)(2).)" (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.) At a hearing on the order to show cause, the burden of proof is "on the prosecution to prove, beyond a reasonable doubt, that the [defendant] is ineligible for resentencing." (*Id.*, subd. (d)(3).)

Here, defendant filed a petition for relief pursuant to section 1170.95, alleging eligibility for relief pursuant to section 1170.95, subdivision (a), identifying his case

6.

number and the year of his conviction, and seeking appointment of counsel. The trial court did not dismiss the petition for any procedural deficiency. Instead, the trial court conducted an initial screening of the petition (the first prima facie review pursuant to section 1170.95, subdivision (c)), relying on a factual summary drawn from the appellate opinion in codefendant Chatman's appeal. Based on that factual summary, the trial court concluded:

> "[Defendant] could be convicted of first[ ]degree murder today, regardless of the changes to section[ ] 188 or 189, because the evidence demonstrates premeditated and deliberate murder. Arguendo, if [defendant] could only be convicted under the felony murder theory, he would still not be eligible for relief. [Defendant], with the intent to kill … commanded … the actual killer in the commission of the murder in the first degree. He was also a major participant who acted with reckless indifference to human life, in violation of subdivision (d) of section 190.2."

The parties agree, as do we, that the trial court's reliance on the factual summary from Chatman's appeal was error. Defendant argues that the procedure was both unauthorized by statute and conducted in violation of defendant's Fifth and Fourteenth Amendment due process rights.[6]

While the court could have conducted its initial prima facie review pursuant to section 1170.95, subdivision (c), in consideration of the record in *defendant's* case (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1138), section 1170.95 did not permit it to consider the record created in an action to which defendant was not a party. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 982 [the trial court should not engage in "factfinding without first issuing an order to show cause and allowing the parties to

---

[6] Defendant also argues that the court denied him the statutory right to counsel created by section 1170.95, subdivision (c), and his Sixth Amendment right to counsel. However, because the court denied defendant's petition at the initial screening, the trial court did not reach the issue of appointment of counsel. We note, if defendant's petition survives the initial screening on remand, the trial court must appoint counsel.

present evidence at a hearing"].)  The trial court relied on the erroneously considered facts to come to its conclusion.  For that reason, we reverse.

Because we agree that the consideration of evidence outside of defendant's record of conviction violated section 1170.95, we do not address defendant's constitutional argument.

## DISPOSITION

The order denying defendant's section 1170.95 petition is reversed, and the matter is remanded to the trial court.